UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CECIL BRANCH,

    Plaintiff,

Case No. 11-15616

v.

Hon. John Corbett O'Meara

SCHOSTAK BROTHERS & COMPANY,
INC., Domestic Profit Corporation,
PAULA GOLDMAN-SPINNER, an individual,

    Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Before the court is Defendants' motion for summary judgment, filed September 17, 2012. Plaintiff filed a response on November 13, 2012; Defendants submitted a reply brief on November 27, 2012. For the reasons explained below, Defendants' motion is granted in part and denied in part.

**BACKGROUND FACTS**

On December 22, 2011, Plaintiff Cecil Branch filed this action against his former employer, Defendant Schostak Brothers & Company and Paula Goldman-Spinner, his former supervisor. Plaintiff was employed with Schostak from 2006 until his termination on February 10, 2011. Schostak is a real estate development, management, leasing, and consulting company based in Livonia, Michigan. Plaintiff alleges his termination was discriminatory and that he was retaliated against in violation of both the FMLA and ADA.

Plaintiff began his employment with Schostak on February 6, 2006, as a Facility Engineer responsible for maintaining and managing the company's Laurel Park Place property. Initially, Plaintiff reported to Lee Schostak. On January 24, 2007, Plaintiff received an exceptional performance review and was given a $5,000 raise (approximately 10% of his salary). Assuming Plaintiff met certain requirements, he would obtain an additional increase of $5,000 by August 1, 2007. In May 2007, Plaintiff was promoted to an Operations Manager and in this capacity, he reported directly to Goldman-Spinner. In this new position, Plaintiff maintained and managed five properties. Plaintiff successfully completed the additional responsibilities associated with his promotion and received the second half of his pay increase on June 1, 2007. Pl.'s Dep. at 155; Pl.'s Ex. A and D.

In August 2007, Plaintiff began experiencing stomach problems and notified Goldman-Spinner. Plaintiff sought time off for his health issues and Goldman-Spinner responded that he could not take time off because the company was in the middle of budgeting. Pl.'s Dep. at 59. Subsequently, Plaintiff sought FMLA leave from Schostak's HR department and his FMLA leave was granted. On September 11, 2007, Plaintiff underwent hernia surgery and returned to work on October 29, 2007. Pl.'s Dep. at 57-59. When Plaintiff returned to work, he testified that Goldman-Spinner would make embarrassing remarks about his health in front of others when he had to leave a meeting to use the restroom or because he walked with a limp. Pl.'s Dep. at 79.

In March 2008, Plaintiff was reprimanded in writing for authorizing $57,000 worth of work without a signed contract with a tenant for improvements. Goldman-Spinner expressed concerns about Plaintiff's ability to effectively communicate and his adherence to established policies and procedures. Def.'s Ex.10. Plaintiff testified, however, that he did not authorize the

2

work, that he needed Goldman-Spinner's approval for all work over $5,000, and that she actually approved the project. See Pl.'s Dep. at 64-67. In retrospect, Plaintiff felt that the reprimand was "really the start of issues where she was going to . . . try to get rid of me because of my health issues." Id. at 67.

On May 29, 2008, Plaintiff received his first performance appraisal from Goldman-Spinner. The appraisal stated Plaintiff met expectations and standards in many areas, but that "health issues and family responsibilities affected consistency and ability to meet all job requirements." Pl.'s Dep. at 78-81; Def.'s Ex. 11. Goldman-Spinner also noted in the appraisal that "most stated objectives from the prior year remain incomplete with little or no improvement. Factors contributing include staffing deficiencies and prolonged health issues during the year." Id. Goldman-Spinner testified that she believed that Plaintiff's health issues were affecting his ability to do his job. Goldman-Spinner Dep. at 99-100.

Plaintiff received his next performance review from Goldman-Spinner on March 4, 2009. Goldman-Spinner found that Plaintiff met expectations in most categories reviewed, except for "planning," "timeliness," "quantity of work," and "follow-up." Def.'s Ex. 14. Plaintiff disagreed with Goldman-Spinner's assessment, testifying: "She said that none of my stuff was turned in on time and I told her that I always turned my things in prior to her deadlines but they sit on her desk for weeks on end and she said it's my responsibility for me to get it off her desk and bring it back up to her." Pl.'s Dep. at 95.

In March 2009, Goldman-Spinner reduced Plaintiff's responsibilities for two properties, Laurel Park and Pointe Plaza. Schostak hired Art Fields as an operations manager for those properties; Fields reported to Plaintiff. Pl.'s Dep. at 83. Based on this reallocation of Plaintiff's responsibilities, his salary was decreased by approximately $10,000, but his title remained the

3

same, Operations Manager. Def.'s Ex. 13. Plaintiff complained that Goldman-Spinner did not inform him of the pay reduction, but that he first found out when his wife noticed his paycheck was short. Pl.'s Dep. at 88-90.

In August 2009, Goldman-Spinner reprimanded Plaintiff for authorizing services valued at $3,800 without her approval. Def.'s Ex. 16. Plaintiff testified that the services were for an "after hours emergency," and that he so informed Goldman-Spinner, who had told him to "go ahead." Pl.'s Dep. at 99-100. Plaintiff testified that when Goldman-Spinner wrote him up for authorizing payment without her approval, he reminded her that she had in fact approved the project. Id. at 100-101. He testified that Goldman-Spinner's response was that she "didn't recall." Id.

On October 16, 2009, Plaintiff underwent emergency gall bladder surgery and was again granted FMLA leave from October 15, 2009, to November 6, 2009. During the same year, Plaintiff was also diagnosed with Crohn's disease. Pl.'s Dep. at 108. When Plaintiff returned to work, he testified that Goldman-Spinner was upset with him for taking medical leave and told him "you left me hanging again." Id. at 134. He explained that the surgery was not planned; her response was "you keep taking too much time off work for your medical issues." Id.

Plaintiff's 2009 performance appraisal indicated that he made little improvement from the previous year and required improvement in several areas. Def.'s Ex. 18. At the end of 2009, Plaintiff went to Natalie Gajewski, an HR employee, to complain about Goldman-Spinner. He told Gajewski that Goldman-Spinner was making comments about him going to the bathroom too often and that Plaintiff "shouldn't eat lunch" because of his health issues. Plaintiff testified that Defendant Goldman-Spinner made these comments in front of contractors. Pl.'s Dep. at 114.

On December 16, 2009, Goldman-Spinner received a written reprimand regarding her management style: "Effective immediately you must adhere to our Core Values of training and developing your staff, empowering and recognizing their accomplishments and treating them with dignity and respect. It is never acceptable to speak harshly or in a threatening or condescending manner." Pl.'s Ex. H.

In January 2010, Goldman-Spinner, Gajewski, and Mark Schostak, Goldman-Spinner's supervisor, met to discuss how Goldman-Spinner could "improve her relationship with her internal staff members." Pl.'s Ex. I. According to Gajewski's meeting notes, Goldman-Spinner stated that "she has had the challenge of staff members who have been ill and out of the office for periods of time." Id. Goldman-Spinner also stated that "she isn't certain that she has the right people on the bus." Id.

Plaintiff took his third FMLA leave from April 28, 2010, to June 23, 2010. Def.'s Ex. 9. While he was on leave, Goldman-Spinner prepared his evaluation for the previous year. See Pl.'s Dep. at 136-37. Goldman-Spinner gave Plaintiff a 1.32 overall rating out of four, with four being "excellent" and one being "requires improvement." Pl.'s Ex. J. Goldman-Spinner referenced Plaintiff's health issues again, stating "health issues have affected ability to be on the job consistently" and "must plan for unknown occurrences and set timing of projects to accommodate delays caused by sources outside control. Communicated project activity to staff, vendors and supervisor when extended absence is anticipated (ie vacations, illness, etc.)." Id. Plaintiff testified that he was "devastated" to receive the poor review and that he disagreed with Goldman-Spinner's assessment. Pl.'s Dep. at 138. Plaintiff stated that he never had an "attendance issue." Id. at 138-39.

Plaintiff responded to Goldman-Spinner's review in a letter dated April 23, 2010.  Pl.'s Ex. M.  In it, Plaintiff stated he was "baffled" by the evaluation and that he felt "personally mistreated and underappreciated." Id.  He closed by saying that "I would be interested in pursuing the management courses per previous discussions and given monthly report cards to ensure I am meeting the departmental expectations." Id.

When Plaintiff returned to work, he was reinstated to his prior position as an Operations Manager.  However, two of the three buildings under Plaintiff's management were reassigned to other employees.  Def.'s Ex. 18.  See Pl.'s Dep. at 147, 152.  Plaintiff remained responsible for the Maccabees building.  Id. at 152.

On several occasions in 2010, Goldman-Spinner alleges Plaintiff failed to effectively communicate and follow-up with her regarding various work issues.  Plaintiff acknowledged that his position demanded a "24-hour call," but thought that checking his emails on the weekends and late at night was an unrealistic expectation, particularly when he was not provided with a phone capable of receiving email.  Id. at 168-169.  Plaintiff states that he would receive memos or reprimands from Goldman-Spinner about his lack of communication when he in fact informed her of the issue at hand or had already turned in the materials requested.  See Pl.'s Dep. at 161-65.

Plaintiff received a quarterly review from Goldman-Spinner in November 2010, where she noted his strengths were "attitude and adaptability, staff rapport, hands-on technical knowledge, organizational skills and customer relations."  Def.'s Ex. 21.  She noted "[a]reas for improvement include communication, critical detail analysis, contract compliance, financial aptitude, staff training, delegation, follow-up, time management and industry trending." Id.

Plaintiff's annual review for 2010 was scheduled for early 2011. Instead of receiving an annual review, Plaintiff was called into Goldman-Spinner's office and terminated on February 10, 2011. On February 15, 2011, Plaintiff filed a charge with the Equal Employment Opportunity Commission and received a notice of right to sue on September 24, 2011. Plaintiff's complaint sets forth four counts: Count I, Family and Medical Leave Act ("FMLA") (interference); Count II, FMLA (retaliation); Count III, Americans with Disabilities Act ("ADA") (discrimination); and Count IV, ADA (retaliation).

## LAW AND ANALYSIS

### I.   Summary Judgment Standard

Summary judgment is appropriate if "there is no genuine issue as to any material fact and … the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When reviewing a motion for summary judgment, the facts and any reasonable inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The party opposing summary judgment, however, must present more than a "mere scintilla" of evidence; the evidence must be such that a reasonable jury could find in favor of the plaintiff. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

### II.   FMLA Claims

#### A.   FMLA Interference Claim

Plaintiff claims that Defendants interfered with his right to take FMLA leave. Under 29 U.S.C § 2615(a), it is unlawful for any employer to interfere with, restrain, or deny the exercise or attempt to exercise FMLA leave. An employee returning to work after taking leave has the right to be "restored by the employer to the position of employment held by the employee when

7

the leave commenced," or "equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1)(A)-(B). With respect to an interference claim, "the issue is simply whether the employer provided its employee the entitlements set forth in the FMLA – for example a twelve-week leave or reinstatement after taking a medical leave." Arban v. West Pub. Corp., 345 F.3d 390, 401 (6th Cir. 2003) (citation omitted). An employee cannot establish an FMLA interference claim when he is granted leave and is reinstated to the same job upon his return. Seeger v. Cincinnati Bell Telephone Co., L.L.C, 681 F.3d 274, 283 (6th Cir. 2012).

In the instant case, there is no dispute among the parties that Plaintiff's three requests for FMLA leave were granted. Further, immediately following each leave, Plaintiff was reinstated to his previous position. Although Plaintiff contends that his responsibilities were reduced after his 2007 and 2010 leaves, such allegations are more appropriately analyzed under a retaliation theory rather than an interference theory. See Seeger, 681 F.3d at 282-84. Accordingly, the court will grant summary judgment in favor of Defendant on Plaintiff's FMLA interference claim.

  **B.**   **FMLA Retaliation Claim**

Plaintiff claims he was retaliated against for taking FMLA leave. The FMLA prohibits employees from retaliating against employees who exercise their rights under the Act. 29 U.S.C. § 2615(a)(1). To establish a prima facie case of retaliation, Plaintiff must establish: (1) he availed himself of a protected right under the FMLA; (2) Defendants were aware of the protected activity; (3) he suffered an adverse employment action; and (4) there is a causal connection between the protected activity and the adverse employment action. Saroli v. Automation & Modular Components, Inc., 405 F.3d 446, 451 (6th Cir. 2005). The causal connection is

8

established by showing that the employer would not have taken the action but for the employee's protected activity. Agee v. Northwest Airlines, 151 F. Supp.2d 890, 896 (E.D. Mich. 2001) (citing Routes v. Henderson, 58 F. Supp.2d 958, 979 (S.D. Ind. 1999)). Furthermore, "employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under 'no fault' attendance policies." 29 C.F.R. § 825.220(c).

Once a prima facie case of discrimination is established, the McDonnell-Douglas burden shifting analysis applies to retaliation claims brought pursuant to the FMLA. See McDonnell Corp. v. Green, 411 U.S. 792, 802 (1973). The employer must then provide a legitimate non-discriminatory reason for its actions. Once the employer provides a legitimate reason for its actions, the burden shifts back to the employee, who must show that the employer's articulated explanation is a pretext for discrimination. Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133 (2000). An employee may demonstrate pretext by showing that the employer's reason "1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." Johnson v. Kroger Co., 319 F.3d 858, 866 (6th Cir. 2003).

Defendants contend that Plaintiff's responsibilities were reduced and he was terminated as a result of poor performance. However, Plaintiff has provided ample evidence that Goldman-Spinner took a negative view of Plaintiff's medical leaves and health issues. Although Goldman-Spinner documented Plaintiff's allegedly poor performance, the evidence creates an issue of fact as to whether the performance issues raised were legitimate or manufactured to

create a "paper trial" in support of Plaintiff's termination.[1] Accordingly, the court will deny Defendant's motion with respect to Plaintiff's FMLA retaliation claim.

### III. ADA Claim

Although Plaintiff raises a failure to accommodate claim in his complaint, it appears that Plaintiff is not pursuing that claim. (Indeed, Plaintiff has not identified an accommodation that he requested and that was denied.) Rather, Plaintiff contends he was discriminated against in violation of the ADA when he was demoted, and ultimately terminated, based on his medical issues resulting from Crohn's disease.[2]

Under the ADA, an employer is prohibited from discriminating against a qualified individual with a disability with respect to compensation, conditions or privileges of employment. 42 U.S.C. § 12112(a). Plaintiff must prove the following elements to establish a prima facie case of discrimination in violation of the ADA: (1) he is an individual with a disability; (2) he is otherwise qualified to perform the essential functions of his job requirements, with or without reasonable accommodation; and (3) he suffered an adverse employment action because of his disability; (4) the employer knew or had reason to know of his disability; and (5) after rejection or termination, the position remained open, or the disabled individual was

---

[1] Defendants contend Plaintiff's retaliation claim related to his 2008 change in responsibilities and salary decrease is barred by the two-year statute of limitations under 29 U.S.C. § 2617(c)(1). However, under 29 U.S.C. § 2615(a)(2), willful discrimination claims under FMLA may be brought within three years of the date of the last event constituting the alleged violation. 29 U.S.C. § 2617(c)(2). Whether or not Defendants' actions relating to Plaintiff's 2008 change in responsibilities and salary decrease were willful is a question of fact.

[2] In his response brief, Plaintiff argues for the first time that he suffered a hostile work environment. Because this claim was not raised in the complaint, it cannot be raised now. See Bridgeport Music, Inc. v. WM Music Corp., 508 F.3d 394, 400 (6th Cir. 2007).

10

replaced by a member outside the protected class. Hopkins v. Electronic Data Sys. Corp., 196 F. 3d 655, 660 (6th Cir. 1999).

An ADA charge must be filed with the EEOC within 180 days after the alleged unlawful employment practice occurred or within 300 days if the individual has initially instituted proceedings with a state or local agency. 42 U.S.C. § 2000e-5(e)(1). Plaintiff filed his charge with the EEOC on February 15, 2011 and received notice of a right to sue from the EEOC on September 24, 2011. Consequently, Plaintiff's claims related to his demotion and salary decrease in 2009 are barred because they occurred more than 300 days prior to the EEOC filing. Therefore, Defendants' motion for summary judgment on that issue is granted.

However, Plaintiff's claims of ADA discrimination related to his termination are not barred by the statute of limitations. Plaintiff timely filed his charge with the EEOC on February 15, 2011, five days after his termination with Schostak. Also, Plaintiff filed his complaint on December 22, 2011, within 90 days after he received notice of right to sue from the EEOC on September 24, 2011. Accordingly, the court will consider Plaintiff's ADA discrimination claim.

To begin, there is no dispute between the parties that Plaintiff suffers from a disability, that Defendants knew of this disability, or that Plaintiff's position was filled by an individual outside of the protected class. However, the parties do not agree to as to the second and third elements: whether Plaintiff was qualified to perform the essential functions of his job requirements, with or without reasonable accommodation, and whether Plaintiff's termination was due to his disability.

Defendants contend that because Plaintiff was not meeting performance expectations, he was not qualified and his termination was due to poor performance. As discussed above, however, Plaintiff has raised an issue of fact as to whether Goldman-Spinner's assessment of his

performance was legitimate. The court is mindful that it is not appropriate to question an employer's business judgment regarding the performance of its employees; however, Plaintiff has provided evidence that Goldman-Spinner's judgment may have been influenced by her negative reaction to Plaintiff's medical leaves and health issues. That being the case, it is for the jury to decide whether Plaintiff was terminated as a result of his disability or as a result of his job performance. The court will deny Defendants' motion for summary judgment with respect to Plaintiff's ADA discrimination claim.

## ORDER

IT IS HEREBY ORDERED that Defendants' motion for summary judgment is DENIED IN PART and GRANTED IN PART, consistent with this opinion and order.


May 17, 2013                                       s/John Corbett O'Meara
                                                   United States District Judge



I hereby certify that a copy of this opinion and order was served upon counsel of record on this date May 17, 2013 using the ECF system.


                                                   s/William Barkholz
                                                   Case Manager

12